IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

THE BURLINGTON INSURANCE      )
COMPANY,                      )  Civ. No. 09-00587 ACK-BMK
                              )  Civ. No. 10-00382 ACK-BMK
          Plaintiff,          )      (Consolidated)
                              )
     v.                       )
                              )
PANACORP, INC.; MACARIO C.    )
PANAJON; DAVID KAHOOKELE;     )
KIMBERLY ANNE NORVA,          )
INDIVIDUALLY AND AS PERSONAL  )
REPRESENTATIVE OF THE ESTATE OF )
SEAN MIGUEL NORVA, DECEASED, AND )
AS NEXT FRIEND OF KHELAN NORVA, )
A MINOR; MARIA MARQUEZ; and JOEL)
REHMER,                       )
                              )
          Defendants.         )
_____)
                              )
THE BURLINGTON INSURANCE      )
COMPANY,                      )
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
PSC INDUSTRIAL OUTSOURCING,   )
L.P.,                         )
                              )
          Defendant.          )
_____)


**ORDER (1) GRANTING DEFENDANT REHMER'S STAY MOTION (2) GRANTING DEFENDANT PSC'S STAY MOTION AND (3) DENYING DEFENDANT NORVA'S MOTION TO DISMISS**

## FACTUAL BACKGROUND[1/]

This consolidated declaratory judgment action stems from an industrial explosion ("Explosion") at a used oil recycling plant ("Plant") in Kapolei, Hawai'i, operated by PSC Industrial Outsourcing, L.P. ("PSC").  On May 30, 2008, PSC entered into a contract agreement ("5/30/2008 Contract") with a contractor, identified as "Pan Co," to perform work at the Plant. Macario C. Panajon ("Panajon"), as President, signed the 5/30/2008 Contract on behalf of the contractor.  Under this contract, Pan Co promised it carried insurance and that it would include PSC as an additional insured.  It also agreed to defend, indemnify, and hold harmless PSC and its agents and employees from and against any and all claims and damages arising out of the contract work.

On October 7, 2008, Pan Co workers,[2/] including Sean Miguel Norva ("Sean Norva"), performed work at the Plant.  Joel Rehmer ("Rehmer"), a PSC operations manager, was also working at the Plant that day.  While Sean Norva was welding on a catwalk, a used oil tank below suddenly exploded.  The Explosion killed Sean

_____

[1/] The facts as recited in this Order are for the purpose of disposing of the instant motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[2/] PSC contends that these workers were employed by Panajon or one or more of Panajon's companies, not necessarily Pan Co. The Court will later address the parties' dispute regarding the identity of the contractor bound by the 5/30/2008 Contract.

Norva, injured David Kahookele ("Defendant Kahookele" or

"Kahookele"), and caused damage to the Plant and to Bomat, Ltd.

d.b.a. Bonded Materials Company ("Bomat"), a concrete production

facility nearby.

On October 31, 2008, PSC notified "PanCo," attention

"Mr. Mario Panajon," of claims arising from the Explosion, asked

for indemnification, and requested that appropriate insurers be

notified.  At the time of the Explosion, "Macario C. Panajon dba:

Panco" was listed as a Named Insured under a commercial general

liability policy ("Policy") issued by The Burlington Insurance

Company ("Burlington").  Burlington received PSC's October 31,

2008 letter, as well as a subsequent notice that claims had been

asserted against Rehmer.  On December 10, 2009, Burlington

informed PSC that it had no duty to defend or indemnify PSC under

the Policy because the 5/30/2008 Contract "is between PSC and

Panacorp, Inc., while the Named Insured on the policy is Macario

C. Panajon d/b/ Panco, designated an individual on the

Declarations Page. . . . As Panacorp, Inc. is not a Named

Insured, PSC's contract with Panacorp, Inc., does not make PSC an

additional insured under the [Burlington] policy issued to Mr.

Panajon."

As described in greater detail below, PSC and Panacorp,

Inc. ("Panacorp") have been sued in three separate state court

actions (Rehmer has been sued in one state court action).  In

each action, PSC has filed a third party-complaint seeking a declaration that it is covered under the Policy.  Burlington has filed two actions in this Court.  One seeks (1) a declaration that Burlington has no duty to defend or indemnify Panacorp or Norva and (2) reimbursement for the cost of defending Panacorp; another seeks a declaration that Burlington has no duty to defend or indemnify PSC.  These federal actions are now consolidated.

## PROCEDURAL BACKGROUND

I.      **The Norva State Court Action**

On September 24, 2009, Kimberly Anne Norva, individually and as Personal Representative of the Estate of Sean Miguel Norva (deceased) and as Next Friend of Khelan Norva (a minor), and Maria Marquez (collectively, "Norva") filed a personal injury action in the Circuit Court of the First Circuit in Hawai'i against PSC and Rehmer.  <u>Kimberly Norva, et al. v. PSC Industrial Outsourcing, LP, et al.</u>, Civ. No. 09-1-2157-09 PWB ("<u>Norva</u>").

On October 29, 2009, PSC and Rehmer filed separate answers, counterclaims, and third-party complaints.  PSC filed a counterclaim against Norva and a third-party complaint against Panacorp and Burlington.  PSC's third-party complaint sought, among other things, a declaration that PSC is covered under the Policy.  Rehmer's third-party complaint was asserted only against Panacorp, and did not seek declaratory relief.

4

On November 19, 2010, Norva filed a cross-claim against Panacorp.

On March 19, 2010, PSC and Rehmer moved to amend their respective third-party complaints into a consolidated third-party complaint asserting alter-ego claims against Panajon, the sole owner of Panacorp.  The unopposed motion was withdrawn, however, after PSC learned that Panajon and his wife had voluntarily filed for Chapter 13 bankruptcy on April 1, 2010.

On November 29, 2010, the court dismissed PSC's third-party complaint against Burlington without prejudice to PSC's asserting such claims against Burlington in a separate lawsuit.[3/]

## II.       The Kahookele State Court Action

On November 9, 2009, Kahookele filed a personal injury action in the Circuit Court of the First Circuit in Hawai'i against Panacorp and PSC.  <u>David Kahookele v. Panacorp, Inc., et al.</u>, Civ. No. 09-1-2616-11 RAN ("<u>Kahookele</u>").

On April 1, 2010, PSC filed a third-party complaint against Norva, Panajon, and Burlington.  As in <u>Norva</u>, PSC's third-party complaint in <u>Kahookele</u> sought a declaration that PSC is covered under the Policy.

On November 10, 2010, the court granted Burlington's

_____

[3/] Presumably, the state court was persuaded by Burlington's argument that under Hawai'i law, an insurance coverage claim should not be joined in the same action with the underlying tort claim.

motion to sever PSC's third-party complaint against Burlington from the remaining claims in Kahookele.[4/]

III.     **The Bomat State Court Action**

On September 30, 2010, Bomat and Great American Insurance Company filed a negligence, strict liability, and nuisance action in the Circuit Court of the First Circuit in Hawai'i against PSC d.b.a Phillips Services Hawaii, PSC Industrial Services, and Panacorp.  Bomat, Ltd. v. PSC Industrial Outsourcing, LP, et al., Civ. No. 10-1-2090-09 RAT ("Bomat").

On October 20, 2010, PSC filed a third-party complaint against Norva, Panajon, and Burlington.  As in Norva and Kahookele, PSC's third-party complaint in Bomat sought a declaration that PSC is covered under the Policy.

On December 1, 2010, Burlington filed a motion to dismiss or to sever the third-party complaint.  That motion is scheduled to be heard by the state court on January 18, 2011.

IV.     **The Consolidated Burlington Federal Action**

On December 11, 2009, Burlington filed a complaint ("12/11/09 Complaint") in this Court against Norva, Panacorp, Panajon, Kahookele, and Rehmer, which sought (1) a declaration that Burlington has no duty to defend or indemnify Panacorp or Norva and (2) reimbursement from Panacorp.  Doc. No. 1 (Civ. No.

---

[4/] Again, the state court was presumably persuaded by Burlington's argument that an insurance coverage claim should not be joined in the same action with the underlying tort claim.

09-00587).[5/]  On January 4, 2010, Panacorp and Panajon filed an answer; on March 9, 2010, Norva filed an answer; on March 16, 2010, Kahookele filed an answer; and on March 19, 2010, Rehmer filed an answer.  Doc. Nos. 8, 20, 24, 31.

On July 7, 2010, Burlington filed a complaint in this Court ("12/7/10 Complaint") against PSC, which sought a declaration that Burlington has no duty to defend or indemnify PSC.  Doc. No. 1 (Civ. No. 10-00382).  PSC filed an answer on August 4, 2010.  Doc. No. 12 (Civ. No. 10-00382).

On July 30, 2010, Rehmer moved to stay the action against him ("Rehmer Stay Motion") based on Panajon's Chapter 13 bankruptcy petition, the Younger abstention doctrine, and/or the Federal Declaratory Judgment Act.  Doc. No. 38.[6/]  Norva filed a memorandum in opposition to the Rehmer Stay Motion ("Norva Opp'n to Rehmer Stay Motion") on August 13, 2010.  Doc. No. 56.  On the same day, Burlington filed a memorandum in opposition to the Rehmer Stay Motion ("Burlington Opp'n to Rehmer Stay Motion") and Panacorp and Panajon moved to join the Rehmer Stay Motion.  Doc. Nos. 57-58.  On August 24, 2010, Rehmer filed a reply to Norva's

_____

[5/] Unless otherwise noted, all references to the docket pertain to the docket in Civ. No. 09-00587.

[6/] Also on July 30, 2010, Burlington filed a Motion for Summary Judgment and/or Partial Summary Judgment Against All Defendants Other Than Macario C. Panajon.  Doc. No. 39.  This motion is currently set for hearing on January 24, 2011.  Doc. No. 78.

opposition to the Rehmer Stay Motion and a reply to Burlington's opposition to the Rehmer Stay Motion ("Rehmer Stay Reply").  Doc. Nos. 62-63.

On August 4, 2010, PSC likewise moved to stay the action against it ("PSC Stay Motion") based on Panajon's Chapter 13 bankruptcy petition, the Younger abstention doctrine, and/or the Federal Declaratory Judgment Act.  Doc. No. 13 (Civ. No. 10-00382).  On August 19, 2010, Burlington filed a memorandum in opposition to PSC's Stay Motion ("Burlington Opp'n to PSC Stay Motion").  Doc. No. 16 (Civ. No. 10-00382).  On August 26, 2010, PSC filed a reply memorandum in support of its stay motion ("PSC Stay Reply").  Doc. No. 20 (Civ. No. 10-00382).

On August 2, 2010, Norva moved to dismiss the 12/11/09 Complaint ("Motion to Dismiss"), and on August 25, 2010, Kahookele moved to join this motion.  Doc. Nos. 48, 65.[7/]

On August 31, 2010, Magistrate Judge Barry M. Kurren held a hearing on the Rehmer Stay Motion and the PSC Stay Motion. Magistrate Judge Kurren (1) denied these stay motions to the extent they were premised on Panajon's bankruptcy and (2) reserved the motions for this Court to rule on to the extent they were based on the Younger abstention doctrine and the Declaratory

---

[7/] On August 6, 2010, Kahookele had filed statements of no position as to the Rehmer Stay Motion and Norva's Motion to Dismiss.  Doc. Nos. 53-54.  Kahookele withdrew these statements of no position on August 25, 2010.  Doc Nos. 69, 71.

Judgment Act.  Doc. Nos.  72, 86; Doc. Nos. 21, 26 (Civ. No. 10-00382).  The two Burlington federal actions were consolidated on the same day.  Doc. Nos. 72, 74; Doc. Nos. 21, 22 (Civ. No. 10-00382).[8/]

On October 8, 2010, PSC and Rehmer filed a statement of no position as to the Motion to Dismiss.  Doc No. 89.  On October 11, 2010, Burlington filed a memorandum in opposition to the Motion to Dismiss ("Opp'n to Motion to Dismiss").  Doc. No. 90.

On October 13, 2010, Norva filed a supplemental memorandum in opposition to the Rehmer Stay Motion ("Norva Supp'l Opp'n to Rehmer Stay Motion").  Doc. No. 94.[9/]

On October 19, 2010, Norva filed an untimely reply to Burlington's opposition to the Motion to Dismiss ("Reply to Burlington Opp'n to Motion to Dismiss").  Doc. No. 95.[10/]

---

[8/] Also on August 31, 2010, the Bankruptcy Court entered an order dismissing Panajon's Chapter 13 bankruptcy petition.  See Doc. Nos. 83-84.

[9/] Although Norva improperly submitted its supplemental memorandum without seeking leave of the Court, the Court will accept this memorandum.  See D. Haw. Local Rule 7.4 ("No further or supplemental briefing shall be submitted without leave of the court.").

[10/] Norva's reply was due by October 18, 2010.  See D. Haw. Local Rule 7.4 (providing that a reply in support of a motion set for hearing must be served and filed "not less than fourteen (14) days prior to the date of hearing" and that "[a]ny opposition or reply that is untimely filed may be disregarded by the court or stricken from the record").  Although the Court will accept the untimely Reply to Burlington Opp'n to Motion to Dismiss, it notes that "[f]ailure to comply with the Local Rules is unfair to the
(continued...)

On October 22, 2010, Burlington requested leave to file a supplemental memorandum regarding the state court's dismissal of PSC's third-party complaint against Burlington in <u>Norva</u>.  Doc. No. 96.  Burlington attached its supplemental memorandum ("Burlington Supp'l Mem. Re: <u>Norva</u>") to its request.  <u>Id.</u>  On the same day, Norva, PSC, and Rehmer each objected to Burlington's request, alternatively requesting leave to file supplemental replies to Burlington's supplemental memorandum.  Doc. Nos. 97-98.  On October 25, 2010, the Court granted Burlington's request for leave to file a supplemental memorandum and Norva's and PSC and Rehmer's request for leave to file supplemental replies.  Doc. No. 99.[11]

On November 8, 2010, PSC and Rehmer filed a supplemental reply to Burlington's supplemental memorandum ("PSC/Rehmer Supp'l Reply Re: <u>Norva</u>").  Doc. No. 112.  On December 6, 2010, supplemental memoranda regarding Burlington's motion to sever PSC's third-party complaint against Burlington from the remaining claims in <u>Kahookele</u> were filed by: Norva ("Norva Supp'l Mem. Re: <u>Kahookele</u>"), Doc. No. 130; PSC and Rehmer

---

[10] (...continued)
opposing side and the Court and impedes the efficient administration of justice."  <u>Barber v. Chatham</u>, 939 F. Supp. 782, 784 n.3 (D. Haw. 1996).

[11] The Court's October 25, 2010 Order also allowed the parties to file supplemental memoranda regarding the resolution of Burlington's motion to sever PSC's third-party complaint against Burlington from the remaining claims in <u>Kahookele</u>.

("PSC/Rehmer Supp'l Mem. Re: <u>Kahookele</u>"), Doc. No. 131; and Burlington ("Burlington Supp'l Mem. Re: <u>Kahookele</u>"), Doc. No. 132.

On December 17, 2010, Burlington filed a motion for leave to file an amended complaint adding Bomat as a party to the consolidated federal action.  Doc. No. 147.

On December 21, 2010, the Court held a hearing on Rehmer's Stay Motion (and Panacorp and Panajon's joinder therein), PSC's Stay Motion, and Norva's Motion to Dismiss (and Kahookele's joinder therein).

## DISCUSSION

Before the Court are Rehmer's Stay Motion (and Panacorp and Panajon's joinder therein), PSC's Stay Motion, and Norva's Motion to Dismiss (and Kahookele's joinder therein).  Rehmer's and PSC's motions argue that the Court should stay the respective federal actions - which are now consolidated - pending resolution of the state actions pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and pursuant to the Declaratory Judgment Act.[12/]  Norva's motion argues that the Court should dismiss the instant federal action under the Declaratory Judgment Act.[13/]  The Court agrees

---

[12/] As noted above, Magistrate Judge Kurren has already denied the stay motions to the extent they are based on Panajon's bankruptcy.

[13/] At the hearing in this matter Norva stated that dismissal is warranted under both the Declaratory Judgment Act <u>and</u> Younger.

with Rehmer and PSC that abstention is appropriate under both _Younger_ and the Declaratory Judgment Act.  Moreover, because Burlington seeks damages as well as declaratory relief, the Court finds it appropriate under _Younger_ and _Gilbertson v. Albright_, 381 F.3d 965 (9th Cir. 2004) (en banc), to stay, rather than to dismiss, the instant action.  Likewise, the Court, in its discretion, finds that a stay is appropriate under the Declaratory Judgment Act.

## I.        _Younger_ Abstention

"Under _Younger_-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests."  _Hawaii Housing Authority v. Midkiff_, 467 U.S. 229, 237-38 (1984).  _Younger_ requires a court to abstain:

> [I]f four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that _Younger_ disapproves.

_San Jose Silicon Valley Chamber of Commerce Political Action_

Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008).[14]

All four of these requirements must be "strictly satisfied" for Younger abstention to be proper.  AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1149 (9th Cir. 2007).  Moreover, "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed."  Gilbertson, 381 F.3d at 968.[15]

### A.    A State-Initiated Proceeding Is Ongoing

"To decide whether there was a pending state judicial proceeding within Younger, we focus on the status of the state court proceeding at the time of the district court's decision [to abstain under Younger] . . . ."  Wiener v. County of San Diego, 23 F.3d 263, 266 (9th Cir. 1994) (emphasis added).  In Hicks v.

---

[14] "An exception to th[e] general [Younger] rule exists if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'"  San Jose Silicon Valley, 546 F.3d at 1092 (citation omitted).  Burlington does not argue that this exception applies here, and there is no reason to believe it does.

[15] Although Gilbertson involved a damages claim only (and the state court action did not afford a right to obtain damages), its language and reasoning imply that cases seeking both equitable or injunctive relief and damages should be stayed in their entirety.  See Gilbertson, 381 F.3d at 981 ("[W]hen damages are sought and Younger principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending.  This allows . . . the state an opportunity to pass on . . . constitutional issues in the context of its own procedures, while still preserving the federal plaintiff's opportunity to pursue compensation in the forum of his choice." (emphasis in original)).

Miranda, 422 U.S. 332 (1975), the Supreme Court held that "where state . . . proceedings are begun . . . after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force." Id. at 349. "Hicks teaches that it is not the filing date of the federal action that matters, but the date when substantive proceedings begin." M & A Gabaee v. Cmty. Redevelopment Agency of L.A., 419 F.3d 1036, 1039 (9th Cir. 2005).[16/]

Here, no proceedings of substance on the merits have occurred in the instant federal action, whereas three state-initiated proceedings – Norva, Kahookele, and Bomat – are now ongoing. Two of these proceedings involve the same coverage dispute at issue in the instant federal action: (1) PSC's third-party declaratory judgment claim against Burlington Kahookele and (2) PSC's third-party declaratory judgment claim against Burlington Bomat. Burlington Opp'n to Rehmer Stay Motion Ex. D; Burlington Supp'l Mem. Re: Kahookele Ex. D.[17/]

---

[16/] The Court notes that the Ninth Circuit has explicitly rejected the argument that "the existence of a merely 'embryonic' state action - one in which no substantive proceedings have taken place - does not require a federal court to engage in Younger abstention." Gabaee, 419 F.3d at 1039-41.

[17/] Although PSC's third-party declaratory judgment claim against Burlington in Norva also involved the same coverage dispute at issue here, this claim has been dismissed without prejudice. Burlington Opp'n to Rehmer Stay Motion Ex. B;
(continued...)

14

The Court recognizes that PSC's third-party claim against Burlington in <u>Kahookele</u> has been severed, and that Burlington has moved to dismiss or sever PSC's declaratory claim in <u>Bomat</u>.  <u>See</u> PSC/Rehmer Supp'l Reply Re: <u>Norva</u> Ex. D; Burlington Supp'l Mem. Re: <u>Kahookele</u> Exs. B, E.  But these claims are still before the state court, and the Court's inquiry focuses on whether a parallel proceeding is <u>now</u> pending or ongoing.  <u>See</u> <u>Wiener</u>, 23 F.3d at 266; <u>see also</u> <u>Bass v. Butler</u>, 258 F.3d 176, 179 (3d Cir. 2001) (noting that <u>Younger</u> abstention "provides for federal deference to ongoing, not completed, parallel state proceedings").  Accordingly, the Court is unpersuaded by Burlington's speculative argument that there are no ongoing or parallel proceedings because Burlington plans at a future date to remove PSC's severed <u>Kahookele</u> declaratory claim – and, presumably, plans to remove the <u>Bomat</u> declaratory claim if the claim is severed or dismissed and re-filed.  <u>See</u> Burlington Supp'l Mem. Re: <u>Norva</u> at 4; Burlington Supp'l Mem. Re: <u>Kahookele</u> at 2-3, 6.[18/]

---

[17/](...continued)
PSC/Rehmer Supp'l Mem. Re: <u>Kahookele</u> Ex. A.  PSC states that it intends to re-file this claim against Burlington in another action in state court.  PSC/Rehmer Supp'l Mem. Re: <u>Kahookele</u> at 2.  Presumably, Burlington would thereafter remove the claim, and PSC would seek to have the claim remanded.  As discussed below, the Court need not speculate about this turn of events.

[18/] Moreover, these claims, if removed, will likely be subject to remand under <u>Younger</u> and the Declaratory Judgment Act
(continued...)

In any event, the underlying state actions constitute ongoing parallel proceedings even apart from PSC's declaratory judgment claims against Burlington.  In <u>Hawaii Housing Authority</u>, the Supreme Court held that <u>Younger</u> applies "whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests."  467 U.S. at 237-38.  Here, Burlington could have presented the instant claims for declaratory judgment and reimbursement in the underlying state actions, which are currently ongoing.  Consequently, <u>Norva</u>, <u>Kahookele</u>, and <u>Bomat</u> are parallel proceedings for purposes of <u>Younger</u> abstention.  <u>See</u> <u>Int'l Fidelity Ins. Co. v. City of New York</u>, 263 F. Supp. 2d 619, 633 (E.D.N.Y. 2003) (noting that the first prong of <u>Younger</u> requires "a parallel proceeding, pending at the time the federal court action was filed, in which the plaintiff may raise and have adjudicated the same claims it seeks to press in federal court and obtain the same relief"); <u>cf.</u> <u>Rowley v. Wilson</u>, 200 F. App'x 274, 275 (5th Cir. 2006) (finding that state proceedings were ongoing for <u>Younger</u> purposes even though the federal lawsuit had additional defendants with additional claims against them).

This conclusion is consonant with Ninth Circuit precedent holding that, for purposes of abstention under the

---

[18]/(...continued) for similar reasons as those discussed in this Order.

Declaratory Judgment Act, "a state proceeding [is] parallel to a
federal declaratory judgment action when: (1) the actions arise
from the same factual circumstances; (2) there are overlapping
factual questions in the actions; or (3) the same issues are
addressed by both actions." <u>Gemini Ins. Co. v. Clever Constr.,
Inc.</u>, Civ. No. 09-00290 DAE-BMK, 2009 WL 3378593, at *7 (D. Haw.
Oct. 21, 2009); <u>see</u> <u>Golden Eagle Ins. Co. v. Travelers Cos.</u>, 103
F.3d 750, 754-55 (9th Cir. 1996), <u>overruled in part on other
grounds by</u> <u>Gov's Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225
(9th Cir. 1998) (en banc); <u>Employers Reinsurance Corp. v.
Karussos</u>, 65 F.3d 796, 800 (9th Cir. 1995), <u>overruled in part on
other grounds by</u> Dizol, 133 F.3d at 1227.

First, the instant federal action arises from the same
factual circumstances as the three state actions: i.e., the
October 7, 2008, explosion at PSC's used oil recycling plant.
Second, and more importantly, there are overlapping factual
questions in the federal and state actions.  For example, in
<u>Norva</u>, <u>Kahookele</u>, and <u>Bomat</u>, PSC has asserted third-party claims
against Panacorp and/or Panajon - which have not been dismissed
or severed - for breach of contract, misrepresentation, and
implied indemnity based on the 5/30/2008 Contract.  PSC/Rehmer
Supp'l Reply Re: <u>Norva</u> Ex. J (PSC's and Rehmer's first amended
third-party complaint in <u>Norva</u>); Burlington Opp'n to Rehmer Stay
Motion Ex. D (PSC's third-party complaint in <u>Kahookele</u>);

Burlington Supp'l Mem. Re: <u>Kahookele</u> Ex. D (PSC's third-party complaint in <u>Bomat</u>).  Both these third-party claims and the instant federal action require factual determinations regarding the identity of "the Contractor" (1) under the 5/30/2008 Contract and (2) working at the Plant on October 7, 2008.[19/]  Likewise, there are overlapping factual questions in the state and federal actions as to whether Panacorp was the alter-ego of Panajon. Rehmer Stay Motion at 20-21, 24; PSC/Rehmer Supp'l Reply Re: <u>Norva</u> 4-5, 14-15.

In short, the Court finds that state-initiated proceedings are ongoing.

## B. The Proceeding Implicates Important State Interests

The <u>Younger</u> abstention doctrine stems in part from the "'vital consideration' of 'comity,' a proper respect for a state' sovereign ability to have its own courts determine its own law." <u>Carroll v. Mount Clemens</u>, 139 F.3d 1972, 1075 (6th Cir. 1998) (quoting <u>Younger</u>, 401 U.S. at 44).  Consequently, the second threshold element of <u>Younger</u> is satisfied when "'the State's interests in the ongoing proceeding are so important that exercise of the federal judicial power would disregard the comity

---

[19/] Citing PSC's initial third-party complaint in <u>Norva</u>, Burlington states that there is no question that Panacorp was the contractor working at the Plant on October 7, 2008.  Burlington Supp'l Mem. Re: <u>Kahookele</u> at 12.  This complaint has been superceded, however, so Burlington's argument is unpersuasive. <u>See</u> PSC/Rehmer Supp'l Reply Re: <u>Norva</u> Ex. J.

between the States and the National Government.'" AmerisourceBergen, 495 F.3d at 1149 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987)).  "The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case."  Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 618 (9th Cir. 2003).

     The Court finds that the instant federal action implicates important state interests.  Contrary to Burlington's contention, this is not a "classic 'one off' case."  Burlington Opp'n to Rehmer Stay Motion at 11.  Resolution of the instant federal action would have a significant effect on other cases and would bristle with the comity concerns underlying this Younger requirement.  Cf. id. at 10-11.  This is because Burlington's federal claims raise several important and unsettled issues of state law.[20]

     At the outset, the Court notes that in the context of abstention under the Declaratory Judgment Act, the Ninth Circuit has emphasized the importance of a state's interest in regulating

---

     [20] Although "important state interests" may be implicated regardless of whether unsettled issues of state law are involved, Younger's concern with comity is no doubt heightened when a federal court decides important and unsettled questions of state law.  See Younger, 401 U.S. at 43-45; see also Mitcheson v. Harris, 955 F.2d 235, 237-39 (4th Cir. 1992) (discussing how the "state interest in having state courts resolve difficult questions of state law is recognized in the practice of certification, and in the various forms of federal abstention").

insurance:

> The traditional rule that "states ha[ve] a free hand in
> regulating the dealings between insurers and their
> policyholders," makes . . . comity concerns . . .
> particularly weighty in insurance cases.  As the Sixth
> Circuit has explained in declining to exercise its
> jurisdiction, "[t]he states regulate insurance
> companies for the protection of their residents, and
> state courts are best situated to identify and enforce
> the public policies that form the foundation of such
> regulations."  Allstate Ins. Co. v. Mercier, 913 F.2d
> 273, 279 (6th Cir. 1990); see also McCarran-Ferguson
> Insurance Regulation Act, 15 U.S.C. § 1012(a) ("The
> business of insurance, and every person engaged
> therein, shall be subject to the laws of the several
> States which relate to the regulation or taxation of
> such business.").

Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 799 (9th

Cir. 1995) (some citations omitted), overruled in part on other

grounds by Dizol, 133 F.3d at 1227; see also Continental Cas. Co.

v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991), overruled

in part on other grounds by Dizol, 133 F.3d at 1227; Wells Cargo,

Inc. v. Transport Ins. Co., 676 F. Supp. 2d 1114, 1127 (D. Idaho

2009) ("[W]hen Wells Cargo, who did business in Idaho, alleges a

breach of contract and seeks declaratory relief under an

insurance company's failure to perform its obligations with

respect to an Idaho environmental cleanup site, the state of

Idaho has a substantial interest." (citing Karussos, 65 F.3d at

799)).  That said, there is no presumption in favor of abstention

in insurance coverage cases.  Dizol, 133 F.3d at 1225.  Likewise,

not every insurance-related issue will satisfy Younger's

"important state interest" prong.

20

Here, the instant federal action seeks, <u>inter alia</u>, (1) a declaration that Burlington is not required to defend Panacorp or PSC in <u>Norva</u> or <u>Kahookele</u> and (2) reimbursement from Panacorp for all sums that Burlington has expended in defending it in those actions.  As Burlington concedes, the Hawai'i appellate courts have not defined the nature or scope of an insurer's right to reimbursement for the cost of defending a lawsuit, which it is presently defending, on the ground that it has no duty to defend the suit.  Burlington Supp'l Mem. Re: <u>Kahookele</u> at 4; <u>cf.</u> <u>Scottsdale Ins. Co. v. Sullivan Props., Inc.</u> ("<u>Scottsdale II</u>"), Civ. No. 04-00550 HG-BMK, 2007 WL 2247795, at *3-8 (D. Haw. Aug. 2, 2007) (finding that although there was no Hawai'i law on point, the Hawai'i Supreme Court would likely apply equitable principles to allow an insurer to be reimbursed for the cost of defending a lawsuit it was determined, post-settlement, not to have had a duty to defend).  Burlington fails to recognize, however, that this Court has explained at length the importance of this very issue.  <u>See</u> <u>Exec. Risk Indem., Inc. v. Pac. Educ.</u> <u>Servs.</u>, 451 F. Supp. 2d 1147, 1163-64 (D. Haw. 2006).

In declining to predict how the Supreme Court of Hawai'i would rule on the same right to reimbursement issue present here, <u>Executive Risk</u> stated that "a ruling on reimbursement would be a major decision on Hawaii insurance law that could have a tremendous impact on the duty to defend in

hundreds of other cases." <u>Id.</u> at 1163.  This Court continued:

> It is not unusual for defense costs in a typical action
> to be in the tens or hundreds of thousands of dollars.
> Many insureds are not well-funded entities or
> individuals.  It is easy to imagine the impact of a
> ruling in Executive Risk's favor on, say, an insured
> who is an individual being defended in an automobile
> accident case, faced with having to reimburse an
> insurer $25,000 in defense costs.  While a party's
> financial condition does not erase contractual
> obligations, this court, in examining whether such
> obligations even exist, recognizes the impact of any
> substantive ruling on the reimbursement issue.

<u>Id.</u> at 1164.[21/]  As <u>Executive Risk</u> demonstrates, Burlington's

entitlement to reimbursement while it is currently defending

Panacorp, Norva, and PSC implicates important and unsettled state

interests.[22/]

---

[21/] <u>Executive Risk</u> was decided after <u>Scottsdale</u>'s initial
finding that an insurer was entitled to reimbursement where it
was determined, following settlement of the underlying
litigation, that the insurer had not been under a duty to defend
its insured.  Indeed, <u>Executive Risk</u> discussed <u>Scottsdale</u> at
length.  <u>See</u> <u>Exec. Risk</u>, 451 F. Supp. 2d at 1162-63 (discussing
<u>Scottsdale Ins. Co. v. Sullivan Props., Inc.</u> ("<u>Scottsdale I</u>"),
Civ. No. 04-00550 HG-BMK, 2006 WL 505170, at *1 (D. Haw. Feb. 28,
2006)).

[22/] As a general matter, the Court notes that Hawai'i
construes insurance policies liberally and in favor of the
insured.  In <u>Guajardo v. AIG Haw. Ins. Co.</u>, 118 Hawai'i 196, 187
P.3d 580 (2008), the Hawai'i Supreme Court explained:

> [B]ecause insurance policies are contracts of adhesion and
> are premised on standard forms prepared by the insurer's
> attorneys, we have long subscribed to the principle that
> they must be construed liberally in favor of the insured and
> any ambiguities must be resolved against the insurer.  Put
> another way, the rule is that policies are to be construed
> in accord with the reasonable expectations of a layperson.

(continued...)

The Court further agrees with Rehmer and PSC that the instant federal action involves two other important and unsettled issues of state law.

Burlington alleges that the myriad claims against Norva, Panacorp, and PSC in <u>Kahookele</u> and/or <u>Norva</u> are not covered under the Policy "for at least the reason that Panacorp, Inc. is not an insured under the [Policy] [Burlington] entered into with Mr. Panajon as an individual." 12/11/09 Complaint ¶24; 12/7/10 Complaint ¶ 11. The Declarations page of the Policy identifies the named insured as "Macario C. Panajon dba: Panco," an "Individual." Burlington Opp'n to PSC Stay Motion Ex. J. According to Section II of the Policy ("Section II"), "[i]f you are designated in the Declarations" as "[a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." <u>Id.</u>

First, it is unclear under Hawai'i law whether Section II "affords coverage to a corporation that is solely-owned by an individual named insured who conducts a business through the corporation." PSC Stay Reply at 6; Rehmer Stay Reply at 5-8. Burlington argues that this issue is "simple and straightforward" and "does not implicate any unsettled issues of Hawai'i state law," citing the universal rule that a corporation is a distinct

---

[22]/(...continued)
<u>Id.</u> at 202, 187 P.3d at 586.

entity from its shareholders.  Burlington Opp'n to PSC Stay Motion at 16-17.  Burlington also contends this Court has already addressed a similar issue in <u>Allstate Insurance Co. v. Sylvester</u>, Civ. No. 07-00360 SOM/BMK, 2008 WL 2164657, at *1 (D. Haw. May 21, 2008).  The Court is unpersuaded by Burlington's position.

In <u>Sylvester</u>, this Court found that a limited liability company that rented out a beach-front house was not covered under a homeowner's insurance policy that listed two individuals as the named insureds.  <u>Id.</u> at *1, 4.  Although <u>Sylvester</u> did not view the issue regarding the named insureds as unsettled, <u>Sylvester</u> buttressed its holding with a lengthy analysis of how the policy at issue there excluded "'<u>bodily injury</u> or <u>property damage</u> arising out of the past or present <u>business</u> activities of an <u>insured person</u>,'" and defined "'Business' as 'any full or part-time activity of any kind engaged in for economic gain.'" <u>Id.</u> at *5 (emphasis in original).  Here, by contrast, the commercial general liability policy at issue identifies Panajon as an insured "with respect to the conduct of a business of which [he is] the sole owner."  Burlington Opp'n to PSC Stay Motion Ex. J.  Aside from relying on general principles of corporate law, Burlington cites no <u>Hawai'i</u> cases addressing the scope of insurance coverage for a corporation that is solely-owned by an individual named insured.

Moreover, as PSC argues, this issue is not as straight-

forward as Burlington contends.  PSC Stay Reply at 6-8.  Compare
Shelby Ins. Co. v. Ford, 454 S.E.2d 464 (Ga. 1995) (holding that
a policy providing coverage to an appellant "as an individual
'only with respect to the conduct of a business of which you are
the sole owner'" did not extend to the appellant's corporation, a
day care center), with id. at 466 (Sears, J., dissenting)
(finding that the insurance policy covered appellant's
corporation because appellant was "the sole shareholder and
president of the corporation, and exercised close control over
the operations of the day care center"), and Elan Pharm. Research
Corp. v. Employers Ins., 144 F.3d 1372, 1383 n.21 (11th Cir.
1998) (stating that by "relying on Georgia corporate law and the
precise language of the insurance policy, [Shelby] ignored the
plain reality that the individual insured owned and operated both
the corporation and the child-care business").  As PSC points
out, Hawai'i construes insurance policies liberally and "'in
accord with the reasonable expectations of a layperson.'"  PSC
Stay Reply at 7 (quoting Guajardo v. AIG Haw. Ins. Co., 118
Hawai'i 196, 202, 187 P.3d 580, 586 (2008)).  Accordingly, the
Hawai'i courts may agree with the Shelby dissent's and the
Eleventh Circuit's view, rather than the view of the Shelby
majority.

Second, and relatedly, it is unclear under Hawai'i law
whether Section II would provide coverage to a solely-owned

corporation that "is the mere alter-ego of the individual named insured."  PSC Stay Reply at 6; Rehmer Stay Reply at 5-9.  The Court has been unable to locate Hawai'i cases addressing this issue.  And as Rehmer notes, at least one state court has determined that in some circumstances (namely, where a corporate motor carrier is involved), a corporation found to be an alter-ego of its controlling stockholder "'should be considered as a named insured even though the insurance policy is issued in the name of its shareholder doing business under a trade name.'" Rehmer Stay Reply at 8-9 (quoting Miller v. Harco Nat'l Ins. Co., 552 S.E.2d 848, 852 (Ga. 2001)); cf. Keown v. Tudor Ins. Co., 621 F. Supp. 2d 1025, 1032 (D. Haw. 2008) ("The court could find no Hawaii caselaw construing the scope of this type of liability insurance exclusion, and Plaintiff argues that caselaw from at least some jurisdictions supports coverage in this instance.  By granting Plaintiff's Motion for Remand [under the Declaratory Judgment Act], the Hawaii state courts can determine the proper scope of these exclusions." (citation omitted)).

In sum, the Court agrees with Rehmer and PSC that "resolution of the[se] issues will have significant consequences for individuals across the state, particularly individual insureds who believe (and reasonably expect) that their solely-owned corporations are insured by Burlington, as well as insureds with policies similar to the one at issue here."  Rehmer Stay

Reply at 9.  Staying the instant federal action would allow the Hawai'i state courts to determine these important state law issues in the first instance.  Rehmer Stay Motion at 9; cf. Keown, 621 F. Supp. 2d at 1032.

### C. The Federal Plaintiff Is Not Barred From Litigating Federal Constitutional Issues in the State Proceeding

To meet the third requirement for abstention under the Younger doctrine, there must be an adequate opportunity in the state proceedings to raise federal constitutional issues. Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004) (en banc).  The parties do not dispute that this requirement is inapplicable here because Burlington has not raised any federal constitutional issues.

### D. The Federal Court Action Would Enjoin the Proceeding or Have the Practical Effect of Doing So

Although "interference with state proceedings is at the core of the comity concern that animates Younger," abstention under Younger may be appropriate even when the federal proceeding would not "directly interfere" in the ongoing state proceedings. Gilbertson, 381 F.3d at 977-78; see also San Jose Silicon Valley, 546 F.3d at 1096 n.4.  "Thus, Younger abstention is appropriate where a plaintiff seeks declaratory relief, 'because a declaration has the same practical effect on a state court proceeding as an injunction.'"  Lake Luciana, LLC v. County of

<u>Napa</u>, No. C 09-04131 JSW, 2009 WL 3707110, at *2 (N.D. Cal. Nov. 4, 2009) (quoting <u>Gilbertson</u>, 381 F.3d at 977).

The Court agrees with Rehmer and PSC that the instant federal action would have the practical effect of enjoining the underlying state actions.  As discussed <u>supra</u> Section I.A, Burlington's claims for declaratory relief raise several of the same questions at issue in the state actions.  Most obviously, the instant claims mirror PSC's third-party declaratory judgment claims against Burlington in <u>Kahookele</u> and <u>Bomat</u>.  Moreover, in <u>Norva</u>, <u>Kahookele</u>, and <u>Bomat</u>, PSC has asserted third-party claims against Panacorp and/or Panajon - which have not been dismissed or severed - for breach of contract, misrepresentation, and implied indemnity based on the 5/30/2008 Contract.  Both these third-party claims and the instant federal action require determinations regarding the identity of "the Contractor" (1) under the 5/30/2008 Contract and (2) working at the Plant on October 7, 2008.  Likewise, the state and federal actions both involve the question whether Panacorp was the alter-ego of Panajon.  Rehmer Stay Motion at 20-21, 24; PSC/Rehmer Supp'l Reply Re: <u>Norva</u> 4-5, 14-15.

Given these overlapping issues, granting a declaration in the instant action would have the practical effect of enjoining the state actions under the doctrine of collateral estoppel.  See <u>Gilbertson</u>, 381 F.3d at 982 (finding that a

federal court's decision on the merits of the plaintiff's claims "would have the same practical effect on the state proceeding as an injunction" because the issues raised in the federal complaint "go to the heart of" the plaintiff's position in state court); Lake Luciana, 2009 WL 3707110 at *3 (finding that a federal action "'would interfere with the state proceeding in a way that Younger disapproves'" due to the similarity of the issues raised in the federal and state actions) (quoting San Jose Silicon Valley, 546 F.3d at 1092); N Group LLC v. Hawai'i County Liquor Comm'n, 681 F. Supp. 2d 1209, 1238 (D. Haw. 2009) (finding that a decision in the federal action "would have the practical effect of enjoining the proceedings before the [state] court" because the federal plaintiff raised "nearly identical" issues in both actions); Rehmer Stay Motion at 20-21; Rehmer Stay Reply at 9-11.

The Court is unpersuaded by Burlington's argument that AmerisourceBergen mandates a contrary result. Burlington Opp'n to Rehmer Stay Motion at 10-12. The Court is mindful of AmerisourceBergen's discussion of how the Ninth Circuit and the Supreme Court have "rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue." 495 F.3d at 1151-52. In the

29

course of this discussion, however, <u>AmerisourceBergen</u> explicitly

stated that "abstention to avoid concurrent, duplicative

litigation is available in some very limited circumstances - <u>in</u>

<u>particular, when the requested relief in federal court is a</u>

<u>declaratory judgment.</u>"  <u>Id.</u> at 1151 (emphasis added); <u>see also</u>

<u>Lake Luciana, LLC v. County of Napa</u>, No. C 09-04131 JSW, 2010 WL

431905, at *2-3 (N.D. Cal. Feb. 2, 2010) (rejecting the argument

Burlington raises here, for the same reason).[23/]

 Likewise, in its analysis of Supreme Court precedent

extending <u>Younger</u> to declaratory relief actions, <u>Gilbertson</u>

emphasized that if a declaration is "'to be res judicata, . . .

the federal court has virtually lifted the case out of the State

[court] before it could be heard.'"  <u>Gilbertson</u>, 381 F.3d at 971

(citation omitted)).  "Thus, the Court recognized that preclusion

rules give a declaration of rights the same real effect on a

pending state proceeding as an injunction."  <u>Id.</u>  Accordingly,

<u>Gilbertson</u> held that <u>Younger</u> applies where there is interference

that "would have the same practical effect on the state

proceeding as a formal injunction," and, further, that

---

 [23/] The Court notes that <u>AmerisourceBergen</u> cited <u>Wilton v.
Seven Falls Co.</u>, 515 U.S. 277 (1995), which involved abstention
under the Declaratory Judgment Act, and not <u>Younger</u>, for the
proposition that "abstention to avoid concurrent, duplicative
litigation is available in some very limited circumstances."
<u>AmerisourceBergen</u>, 495 F.3d at 1151.  For the reasons discussed,
however, Burlington's reliance on <u>AmerisourceBergen</u> is
unavailing.

"[p]reclusion rules may be relevant to determining the practical effect of a federal court's relief." Id. at 977-78. Finally, Burlington's reliance on AmerisourceBergen is misplaced because there, the relief requested was "an ordinary judgment requiring an individual to pay breach of contract damages." 495 F.3d at 1152; see Rehmer Stay Motion Reply at 9-11. Here, of course, Burlington seeks declaratory relief as well as monetary damages.

Thus, the Court finds that the instant federal action, were it now to proceed, would have the practical effect of enjoining the ongoing state actions.

### E.   Conclusion Regarding Younger Analysis

In summary, the Court finds that all four Younger requirements are strictly satisfied in this case. Moreover, because Burlington seeks monetary damages[24] as well as

---

[24] To the extent Hawai'i law would allow for reimbursement in the circumstances at bar, such a right to reimbursement would likely be equitable in nature, although still an "at law" claim for monetary damages. See Scottsdale II, 2007 WL 2247795 at *3-8 (holding that the Hawai'i Supreme Court would likely apply equitable principles of quasi-contract, restitution, and unjust enrichment to allow an insurer to be reimbursed for the cost of defending a lawsuit it was determined, post-settlement, not to have had a duty to defend); Porter v. Hu, 116 Hawai'i 42, 56-57, 169 P.3d 994, 1008-09 (App. 2007) (holding that a cause of action for unjust enrichment is an "action at law" where damages are "entirely quantifiable by reference to specific numbers set forth in [a] contract and susceptible of proof by reference to that contract"). Consequently, the Court finds that Burlington's reimbursement claim may not be dismissed under the general principle that "a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'" Quackenbush v. Allstate
(continued...)

declaratory relief, the Court finds it appropriate under _Younger_ and _Gilbertson_ to stay, rather than to dismiss, the instant federal action.

In _Gilbertson_, which involved an action for damages alone under 42 U.S.C. § 1983, the Ninth Circuit held that "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed."  381 F.3d at 968.  The Court further explained:

> [W]hen damages are sought and _Younger_ principles apply, it makes sense for the federal court to refrain from exercising jurisdiction _temporarily_ by staying its hand until such time as the state proceeding is no longer pending.  This allows the federal plaintiff an opportunity to pursue constitutional challenges in the state proceeding (assuming, of course, that such an opportunity is available under state law), and the state an opportunity to pass on those constitutional issues in the context of its own procedures, while still preserving the federal plaintiff's opportunity to pursue compensation in the forum of his choice.  In this way, neither the federal plaintiff's right to seek damages for constitutional violations nor the state's interest in its own system is frustrated.

_Id._ at 981 (emphasis in original).[25/]  Following the holding in

_____

24/(...continued)
_Ins. Co._, 517 U.S. 706, 717 (2004); cf. _Woodfin Suite Hotels, LLC v. City of Emeryville_, No. C 07-1719 SBA, 2008 WL 724105, at *13 (N.D. Cal. Mar. 14, 2008) (finding that dismissal, rather than a stay, was appropriate under _Younger_ because the plaintiff "sued for declaratory and injunctive relief and equitable indemnification . . . [but not] _damages at law_" (emphasis in original)).

[25/] Following this discussion, _Gilbertson_ further noted that
(continued...)

Gilbertson, some district courts within the Ninth Circuit have stayed, rather than dismissed, cases seeking both equitable or injunctive relief and damages. See, e.g., Ambat v. City & County of San Francisco, No. C 07-3622 SI, 2007 WL 3101323, at *6 (N.D. Cal. Oct. 22, 2007); Stein v. Quinn, No. C06-1047P, 2006 WL 3091144, at *2-3 (W.D. Wash. Oct. 27, 2006); Van Fossen v. Sierra Sands Unified Sch. Dist., No. CIVF05-1167 AWI LJO, 2006 WL 738717, at *4-5 (E.D. Cal. Mar. 22, 2006); see also Potrero Hills Landfill, Inc. v. County of Solano, No. 09-2514-JAM-JFM, 2009 WL 5206709, at *2 (E.D. Cal. Dec. 23, 2009); McClure v. Baker, Civ. No. 07-386-KI, 2008 WL 268361, at *1 (D. Or. Jan. 29, 2008).

The Court follows the practice employed by these district courts. In the Court's view, although Gilbertson involved a damages claim only, its language and reasoning imply that cases seeking both equitable or injunctive relief and damages should be stayed in their entirety. See Gilbertson, 381 F.3d at 968, 981. This interpretation is buttressed by Canatella v. California, 404 F.3d 1106 (9th Cir. 2005), which rejected an appellant-intervenor's ("Appellant") argument that a stay was

_____

[25]/(...continued)
"[t]o stay, rather than dismiss, a claim for damages also serves the salutary purpose of averting problems with the statute of limitations." Gilbertson, 381 F.3d at 981 n.15 (citing Deakins v. Monaghan, 484 U.S. 193, 203 n.7 (1988)).

required under _Gilbertson_.  _Cf._ _id._ at 1111-12.[26/]  After

discussing _Gilbertson_, _Canatella_ concluded that "[b]ecause

[Appellant] s[ought] declaratory and injunctive relief _but not_

_damages_, the traditional rules of _Younger_ abstention apply.  The

federal courts must abstain permanently because [Appellant] _is_

_asking only_ that the federal courts stop the state proceedings."

_Id._ (emphasis added).  _Canatella_ suggests that were Appellant to

have sought declaratory and injunctive relief _as well as_ damages,

_Gilbertson_'s stay rule would have applied, rather than the

"traditional rules of _Younger_ abstention," and the federal

proceedings would have been stayed.

       Accordingly, because Burlington seeks both damages and

declaratory relief, the Court will stay, rather than dismiss, the

instant federal action.[27/]

_____

       [26/] _Canatella_ involved a unique procedural posture, as the
_Younger_ analysis there was employed to deny Appellant's right to
intervene.  _See_ _Canatella_, 404 F.3d at 1109-12.

       [27/] The Court recognizes that _Gilbertson_ has engendered some
confusion; not all district courts within the Ninth Circuit
interpret _Gilbertson_ to require _cases_ seeking both equitable or
injunctive relief and damages to be stayed.  Some courts instead
cite _Gilbertson_ for the proposition that only the damages _claims_
in such cases must be stayed, whereas the equitable or injunctive
_claims_ may be dismissed outright.  _See, e.g._, _Jones v. Shafer_,
No. 1:07-cv-01498-OWW DLB PC, 2010 WL 546155, at *2 (E.D. Cal.
Feb. 10, 2010); _Zupan v. Cal. Dep't of Corrections_, No. C
09-01014 CW, 2010 WL 530069, at *7 (N.D. Cal. Feb. 8, 2010);
_Peyton v. Burdick_, No. 1:07-cv-00453 LJO TAG, 2008 WL 1776450, at
*4 (E.D. Cal. Apr. 18, 2008); _Lake Luciana_, 2009 WL 3707110 at
*1, 3; _Concord Cmtys., L.P. v. City of Concord_, No. C 05-04094
JSW, 2006 WL 449135, at *2, 4 (N.D. Cal. Feb. 23, 2006); _see also_
                                                    (continued...)

II.         Abstention Under the Declaratory Judgment Act

Under the Declaratory Judgment Act, a district court

has the "unique and substantial discretion" to decide whether to

issue a declaratory judgment.  Wilton v. Seven Falls Co., 515

U.S. 277, 286 (1995).  The Declaratory Judgment Act states that

"courts may declare the rights and other legal relations of any

interested party seeking such declaration."  28 U.S.C. § 2201(a)

(emphasis added).  Therefore, a district court is under no

compulsion to exercise its jurisdiction.  Brillhart v. Excess

Ins. Co. of America, 316 U.S. 491, 494 (1942).

In cases where parallel state proceedings exist, "there

is a presumption that the entire suit should be heard in state

court."  Gov's Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225

(9th Cir. 1998) (en banc) (citing Chamberlain v. Allstate Ins.

Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991)).  Courts should

------

[27]/(...continued)
Hafter v. Bare, No. 2:10-CV-00553-PMP-LR, 2010 WL 4736496, at *2
(D. Nev. Nov. 16, 2010); Stuart v. McMurdie, No.
CV-10-00044-PHX-ROS, 2010 WL 1759448, at *4-5 (D. Ariz. Apr. 30,
2010).  This split among district courts within the Ninth Circuit
is mirrored at the circuit court level outside the Ninth Circuit.
Compare Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598,
603-04 (8th Cir. 1999) ("When monetary damages are sought in
addition to injunctive relief . . . the case should not be
dismissed. . . . [A] stay rather than a dismissal is the
preferred procedure to use in abstaining."), with Meyers v.
Franklin County Court of Common Pleas, 23 F. App'x 201, 206 (6th
Cir. 2001) (unpublished disposition) ("Based on abstention, it
was proper to dismiss [claims] for injunctive and declaratory
relief.  However, with respect to the damages [claims], the
appropriate action based on Younger abstention is a stay."
(footnote and citations omitted)).

avoid gratuitous interference as it would be uneconomical and
vexatious for a federal court to proceed with a declaratory
judgment action in these situations.  Wilton, 515 U.S. at 282-83
(citing Brillhart, 316 U.S. at 495).  However, the existence of a
pendent state action does not automatically bar a request for
federal declaratory relief.  Chamberlain, 931 F.2d at 1367.
Courts consider several relevant factors in determining whether
to exercise jurisdiction or to dismiss or stay the declaratory
judgment proceeding.

    In this analysis a court must proceed cautiously,
balancing concerns of judicial administration, comity, and
fairness to the litigants.  Chamberlain, 931 F.2d at 1367.  The
Supreme Court cautioned district courts to (1) avoid needless
determination of state law issues; (2) discourage litigants from
filing declaratory actions in an attempt to forum shop; and (3)
avoid duplicative litigation.  Dizol, 133 F.3d at 1225 (citing
Brillhart, 316 U.S. at 494); Chamberlain, 931 F.2d at 1367.  In
addition to the Brillhart factors, the Ninth Circuit has
suggested that district courts should consider the following
additional factors:

> "[W]hether the declaratory action will settle all
> aspects of the controversy; whether the declaratory
> action will serve a useful purpose in clarifying the
> legal relations at issue; whether the declaratory
> action is being sought merely for the purposes of
> procedural fencing or to obtain a 'res judicata'
> advantage; or whether the use of a declaratory action
> will result in entanglement between the federal and

> state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies."

Dizol, 133 F.3d at 1225 n. 5 (citation omitted).

Finally, where a district court declines to exercise jurisdiction over a declaratory judgment action, it "is authorized, in the sound exercise of its discretion, to stay or to dismiss" the action.  Wilton, 515 U.S. at 288 (emphasis added).  That said, "a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."  Id. at 288 n.2.

Before determining whether abstention is appropriate under Brillhart and Dizol, the Court will consider whether Burlington's damages claim for reimbursement requires the Court to exercise jurisdiction over the instant matter.

### A.    Effect of Burlington's Reimbursement Claim

"[W]hen other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Dizol, 133 F.3d at 1225 (citing Chamberlain, 931 F.2d at 1367). Consequently, "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are

37

claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." Snodgrass v. Provident Life and Acc. Ins. Co., 147 F.3d 1163, 1167-68 (9th Cir. 1998) (per curiam).  "In other words, the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief." United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1113 (9th Cir. 2001).  If the monetary claim could have been asserted only along with the declaratory claim, and the case is "primarily declaratory in nature," abstention may be appropriate.  See id. at 1112-13.

        In R&D Latex, a glue manufacturer ("Mydrin") was sued in state court and initially defended by one of its insurers ("Travelers"), who had reserved the right to seek reimbursement if it was later determined not to have been under a duty to defend Mydrin.  Id. at 1106.  Travelers ceased defending Mydrin after allegedly spending $300,000.  Id.  Mydrin thereafter sought a declaration in California state court that Travelers had been under a duty to defend and indemnify Mydrin in the underlying litigation.  Id. at 1108.  Travelers removed the action and filed a counterclaim for reimbursement.  Id. at 1108-09.  On appeal, the Ninth Circuit held that the district court should not have

abstained because "Travelers' reimbursement claim is, in all probability, sufficiently independent under California law to trigger mandatory federal jurisdiction."  Id. at 1115.

According to Burlington, "[t]here is no meaningful distinction between R&D Latex and this case."  Burlington Opp'n to Rehmer Stay Motion at 14.  The Court is not convinced, however, as there are several controlling distinctions.

First, as Rehmer and PSC point out, R&D Latex for the most part relied on its "equivocal" assessment that under California law, a claim for reimbursement need not be joined with a claim for declaratory relief.[28/]  Rehmer Stay Reply at 14-17; see R&D Latex 242 F.3d at 1113-14 (citing Buss v. Superior Court, 939 P.2d 766 (Cal. 1997), for the proposition that "[w]e can see no reason . . . why a reimbursement claim must be joined with a claim for declaratory relief" (emphasis in original)).  Unlike the California courts, however, the Hawai'i courts have not defined the nature or scope of an insurer's right to

_____

[28/] R&D Latex noted that its ruling did not "rest solely on the fact that the joined state-law reimbursement claim appears under state law to be independent of the declaratory claim in the requisite sense.  The unique circumstances of this case present additional forceful reasons for retaining federal jurisdiction over the declaratory claim."  R&D Latex Corp., 242 F.3d at 1114. Likewise, after stating that "Travelers' reimbursement claim is, in all probability, sufficiently independent under California law to trigger mandatory federal jurisdiction," R&D Latex added that "[i]n any event, in view of all the circumstances" - including Mydrin's "artful pleading" - the district court abused its discretion by remanding the action.  See id. at 1114-15.

reimbursement.  See supra Section I.B.

Second, the Hawai'i courts have not addressed an insurer's right to reimbursement in circumstances like those now before the Court, i.e., where an insurer seeks reimbursement while defending an alleged insured in ongoing litigation. Although this Court has analyzed an insurer's right to reimbursement generally, it did so where the underlying lawsuit had already settled.  See Scottsdale I, 2006 WL 505170, at *2; Scottsdale II, 2007 WL 2247795 at *3-8.  Similarly, R&D Latex involved a claim for reimbursement where the insurer had already ceased defending its insured.  R&D Latex Corp., 242 F.3d at 1106. Accordingly, Scottsdale and R&D Latex Corp. had no occasion to address the issue at bar, and Burlington's reliance on these cases is misplaced.

Third, assuming Hawai'i courts would recognize a right to reimbursement where an insurer is presently defending an alleged insured in ongoing litigation, the Court finds that such a right would not be available unless (1) the insurer has already obtained a judgment stating that it had no duty to defend the alleged insured or (2) the insurer joins the reimbursement claim with a declaratory claim seeking such a judgment.

Under Hawai'i law, the duty to defend "rests primarily on the possibility that coverage exists.  This possibility may be remote, but if it exists, the insurer owes the insured a

40

defense." <u>Sentinel Ins. Co. v. First Ins. Co.</u>, 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994) (internal brackets omitted, emphasis in original).  In <u>Delmonte v. State Farm Fire & Cas. Co.</u>, 90 Hawai'i 39, 975 P.2d 1159 (1999), the Hawai'i Supreme Court discussed how a bad faith claim may exist even where it is ultimately determined that an insurer had no duty to defend its insured.  <u>Id.</u> at 55, 975 P.2d at 1175.  In doing so, it noted that an insurer may be liable for bad faith if it fails to provide a good faith defense at any point before "there are clear grounds for withdrawal":

> [I]f the insurer assumes the defense and, through mishandling of the defense, causes actual harm to the insured, a bad faith claim is cognizable despite a later declaration that the insurer did not have a duty to defend in the first instance.  Having assumed the defense, the insurer is under a duty to undertake the defense in good faith until such time as there are clear grounds for withdrawal.  <u>In the event of a significant question regarding coverage, the insurer may seek a declaratory judgment.  However, in the interim, the insurer must undertake the defense in good faith.</u>

<u>Id.</u> (emphasis added).

Given the holding of <u>Delmonte</u>, Rehmer is right that "allowing an insurer to exercise an independent right to reimbursement . . . <u>before</u> it obtains a declaratory judgment would be wholly inconsistent with, and likely constitute a breach of, its duty under established law to undertake the defense in good faith."  Rehmer Stay Reply at 15.  Indeed, consistent with its obligations under <u>Delmonte</u>, Burlington has sought a

41

declaration that it has no duty to defend or indemnify Panacorp, and, subsequently, reimbursement from Panacorp "in the event it is determined that [Burlington] had no duty to defend or indemnify [it]." See 12/11/09 Complaint.  As Rehmer and PSC further argue, "[p]ut simply, Burlington may not obtain an order of reimbursement from Panacorp while simultaneously undertaking their defense in good faith and before the Court declares that Burlington owes no defense to Panacorp.  That would put the horse before the cart."  PSC/Rehmer Supp'l Reply Re: Norva at 10.  The Court agrees and is not persuaded by Burlington's argument that R&D Latex and Scottsdale demonstrate its reimbursement claim renders jurisdiction here mandatory.

In short, the Court finds that Burlington's reimbursement claim is not "independent" within the meaning of R&D Latex, the instant action is "primarily declaratory in nature," and the instant action is thus subject to the traditional abstention analysis under the Declaratory Judgment Act.  See Valley Forge Ins. v. Admiral Ins. Co., No. C08-1766-JCC, 2009 WL 1175624, at *3 (W.D. Wash. May 1, 2009) (finding abstention permissible where "the issue of contribution necessarily requires a predicate finding as to the obligations of the respective insurers under the policies at issue"); N. Pac. Seafoods, Inc. v. Nat'l Union Fire Ins. Co., No. C06-795RSM, 2008 WL 53180, at *4, 2008 WL 53180 (W.D. Wash. Jan. 3, 2008) (finding

an action was subject to abstention where breach of contract claims were "inextricably entwined with, and depend[ent] upon a declaration of coverage, for their resolution"); Keown v. Tudor Ins. Co., 621 F. Supp. 2d 1025, 1036 (D. Haw. 2008) (Chang, J.) (finding abstention appropriate where a plaintiff sought a declaration that he was entitled to reimbursement yet this claim could not exist "[w]ithout a declaration of rights under the subject policy"), aff'd 621 F. Supp. 2d 1025, 1032 (D. Haw. 2008).

Having concluded that Burlington's claim for reimbursement does not render jurisdiction mandatory, the Court will now balance the Supreme Court's three Brillhart factors along with the Ninth Circuit's Dizol factors to determine whether abstention is appropriate here.

### B.   Avoiding Needless Determinations of State Law

"A 'needless determination of state law' may involve an ongoing parallel state proceeding regarding the 'precise state law issue,' an area of law Congress expressly reserved to the states, or a lawsuit with no compelling federal interest (e.g., a diversity action)." Keown, 621 F. Supp. 2d at 1031 (quoting Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371-72 (9th Cir. 1991), overruled in part on other grounds by Dizol, 133 F.3d at 1227). However, "[t]he concern in this factor is with unsettled issues of state law, not fact-finding in the specific

case." <u>Nat'l Chiropractic Mut. Ins. Co. v. Doe</u>, 23 F. Supp. 2d

1109, 1118 (D. Alaska 1998) (citing <u>Robsac</u>, 947 F.2d at 1371).

"When state law is unclear, '[a]bsent a strong countervailing

federal interest, the federal court should not elbow its way . .

. to render what may be an uncertain and ephemeral

interpretation of state law." <u>Allstate Insurance Co. v. Davis</u>,

430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting <u>Mitcheson v.

Harris</u>, 955 F.2d 235, 238 (4th Cir. 1992)).

     The Court finds that each of the <u>Robsac</u> considerations

are satisfied here, and allowing this action to proceed would

result in needless determinations of state law issues.  First, as

discussed <u>supra</u> Section I.A., <u>Norva</u>, <u>Kahookele</u>, and <u>Bomat</u> are

parallel to the instant action.  <u>See Gemini Ins. Co. v. Clever

Constr., Inc.</u>, Civ. No. 09-00290 DAE-BMK, 2009 WL 3378593, at *7

(D. Haw. Oct. 21, 2009) ("[A] state proceeding [is] parallel to a

federal declaratory judgment action when: (1) the actions arise

from the same factual circumstances; (2) there are overlapping

factual questions in the actions; or (3) the same issues are

addressed by both actions.").  Second, the instant action

"involves insurance law, an area that Congress has expressly left

to the states through the McCarran-Ferguson Act." <u>Robsac</u>, 947

F.2d at 1371 (citing 15 U.S.C. §§ 1011-12).  Likewise, there is

no compelling federal interest here.  <u>See</u> <u>id</u>. ("Where . . . the

sole basis of jurisdiction is diversity of citizenship, the

federal interest is at its nadir."). Third, as the Court discussed <u>supra</u> Section I.B., the instant action raises several unsettled issues of state law. <u>See</u> <u>Keown</u>, 621 F. Supp. 2d at 1032 (declining jurisdiction over a declaratory judgment claim relating to a liability insurance exclusion "to avoid needlessly determining a state law issue that the Hawaii courts have yet to address").

Accordingly, the Court finds that first <u>Brillhart</u> factor weighs heavily in favor of staying Burlington's federal action.

### C.  Discouraging Forum Shopping

"This factor usually is understood to favor discouraging an insurer from forum shopping, <u>i.e.</u>, filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." <u>American Cas. Co. v. Krieger</u>, 181 F.3d 1113, 1119 (9th Cir. 1999). Where a "declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction." <u>Robsac</u>, 947 F.2d at 1371. "Typically, 'reactive declaratory judgment actions' occur when a party sues in federal court to determine their liability after the commencement of a state court action." <u>Gemini</u>, 2009 WL 3378593 at *8 (citing <u>Dizol</u>, 133 F.3d at 1225). This <u>Brillhart</u> factor also weighs in favor of declining jurisdiction where "a

45

federal plaintiff seeks declaratory relief in anticipation that a related state court proceeding may be filed." Budget Rent-A-Car v. Crawford, 108 F.3d 1075, 1081 (9th Cir. 1997), overruled in part on other grounds by Dizol, 133 F.3d at 1227.

As Rehmer and PSC argue, the timing in which Burlington filed its federal declaratory claims suggests the instant action was reactive:

- ▸ October 29, 2009: PSC files a third-party declaratory judgment claim against Burlington in Norva. Burlington Opp'n to PSC Stay Motion Ex. B.

- ▸ November 24, 2009: PSC sends Burlington a tender demand for defense and indemnity with respect to Kahookele. PSC Stay Motion Ex. M.

- ▸ December 1, 2009: PSC serves its third-party complaint in Norva on whom it mistakenly believes to be Burlington's local insurance agent; the agent forwards PSC's third-party complaint to Burlington by e-mail. PSC Stay Reply Exs. U, V.

- ▸ December 10, 2009: Burlington sends PSC a letter denying coverage with respect to Norva. PSC Stay Motion Ex. N.

- ▸ December 11, 2009: Burlington files a federal action against Norva, Panacorp, Panajon, Kahookele, and Rehmer. Doc. No. 1.

- ▸ April 1, 2010: PSC files a third-party declaratory judgment claim against Burlington in Kahookele. Burlington Opp'n to PSC Stay Motion Ex. D.

- ▸ July 7, 2010: Burlington files a federal action against PSC. Doc. No. 1 (Civ. No. 10-00382).

Based on this chronology, the Court is unpersuaded by Burlington's argument that it was not forum-shopping when it filed the initial complaint in this action because (1) it had not

46

been properly served with PSC's third-party complaint in <u>Norva</u> and (2) PSC's third-party complaint in <u>Kahookele</u> was four months away from being filed.  Burlington Opp'n to PSC Stay Motion at 18-19.  "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent."  <u>Z-Line Designs, Inc. v. Bell'O Int'l LLC</u>, 218 F.R.D. 663, 665 (N.D. Cal. 2003).  Here, Burlington filed the initial complaint in this consolidated action shortly after it had received "specific, concrete indications" that PSC had filed a third-party declaratory judgment claim against it in <u>Norva</u> and that PSC would likely do so the same, imminently, in <u>Kahookele</u>.[29]

The Court is also unpersuaded by Burlington's speculative and inapposite contention that it is unlikely to remain a party in the underlying state actions.  Burlington Opp'n to PSC Stay Motion at 19.  Even if Burlington were no longer a party in the state actions at some future point, this would not mean that Burlington's filing of the instant federal action was

_____

[29] Moreover, Burlington filed its second complaint in this action, against PSC, while third-party declaratory claims against Burlington were pending in <u>Norva</u> and <u>Kahookele</u>.  Burlington claims it did so only because it had already filed its initial federal complaint, at which time Burlington had not known whether PSC was a diverse party.  Burlington Opp'n to PSC Stay Motion at 18-19.

free from forum-shopping.  PSC Stay Reply at 12-13.[30/]  Finally, the Court does not agree with Burlington's claim that PSC's filing of third-party complaints against it in the three state actions evidences a "forum-shopping scheme."  Burlington Supp'l Mem. Re: Kahookele at 1, 6-7.  Although "[f]orum shopping through the filing of declaratory judgment actions is no more appropriate when it favors state over federal jurisdiction," R&D Latex, 242 F.3d at 1115, PSC impleaded Burlington in Norva before it had any "specific, concrete" indications that Burlington would seek a declaratory judgment in federal court.  The Court finds no impropriety in PSC's impleading of Burlington in the two state actions in which PSC was subsequently named a defendant.

        In short, given the circumstantial evidence that Burlington filed the instant federal action in reaction to and/or in anticipation of PSC's related state court actions, the Court finds that second Brillhart factor weighs in favor of a stay.

### D.    Avoiding Duplicative Litigation

        There is a presumption to decline jurisdiction "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed."  Dizol, 133 F.3d at 1225.  "When 'another suit involving

---

        [30/] Moreover, if Burlington removes PSC's severed declaratory claim in Kahookele and severed (or dismissed and re-filed) declaratory claim in Bomat, such claims will likely be subject to remand under Younger and the Declaratory Judgment Act for similar reasons as those discussed in this Order.

the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed.'"  Stewart Title Co. v. Investors Funding Corp., Civ. No. 09-00455 SOM/KSC, 2010 WL 1904981, at *6 (D. Haw. May 11, 2010) (quoting Wilton, 515 U.S. at 283).  That said, "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief."  Dizol, 133 F.3d at 1225.  Further, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically."  Id.

For the reasons discussed supra Sections I.A. and I.D., the Court agrees with Rehmer and PSC that staying the instant federal action will avoid duplicative litigation.  First, there are currently two state proceedings that address the same coverage dispute at issue here: (1) PSC's third-party declaratory judgment claim against Burlington Kahookele and (2) PSC's third-party declaratory judgment claim against Burlington Bomat.  Burlington Opp'n to Rehmer Stay Motion Ex. D; Burlington Supp'l Mem. Re: Kahookele Ex. D.[31/]  As a result, this Court would be

---

[31/] A third state proceeding, Norva, also involved the same coverage dispute at issue here.  Burlington Opp'n to Rehmer Stay Motion Ex. B.  However, PSC's third-party declaratory judgment claim against Burlington in Norva has been dismissed without

(continued...)

49

determining some of the same issues pending before the state
court if the instant federal action were now to proceed.

Second, there are other issues before both this Court
and the state courts even apart from PSC's declaratory judgment
claims against Burlington.  For example, in Norva, Kahookele, and
Bomat, PSC has asserted third-party claims against Panacorp
and/or Panajon for breach of contract, misrepresentation, and
implied indemnity based on the 5/30/2008 Contract.  PSC/Rehmer
Supp'l Reply Re: Norva Ex. J (PSC's and Rehmer's first amended
third-party complaint in Norva); Burlington Opp'n to Rehmer Stay
Motion Ex. D (PSC's third-party complaint in Kahookele);
Burlington Supp'l Mem. Re: Kahookele Ex. D (PSC's third-party
complaint in Bomat).  Both these third-party claims and the
instant federal action involve factual questions regarding the
identity of "the Contractor" (1) under the 5/30/2008 Contract and
(2) working at the Plant on October 7, 2008.  Accordingly, the
state and federal claims "are inherently intertwined," and this
factor weighs in favor of a stay.  See Stewart, 2010 WL 1904981
at *6; see also Phoenix Assurance PLC v. Marimed Found. for
Island Health Care Training, 125 F. Supp. 2d 1214, 1222 (D. Haw.

---

31/(...continued)
prejudice.  PSC/Rehmer Supp'l Mem. Re: Kahookele Ex. A.  PSC
states that it intends to re-file this claim against Burlington
in another action in state court.  PSC/Rehmer Supp'l Mem. Re:
Kahookele at 2.  Presumably, Burlington would thereafter remove
the claim, and PSC would seek to have the claim remanded.

2000) (finding that avoidance of duplicative litigation favored a stay because the district court would otherwise have to decide many of the same issues to be decided in pending state court litigation).

Finally, as Rehmer and PSC argue, a stay would avoid the risk of inconsistent factual findings and judgments.  Rehmer Stay Motion at 32-33; PSC Stay Motion at 35-36.  "[W]ith the risk of duplicative litigation comes the risk of inconsistent outcomes."  OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel, 1:09-cv-00257 AWI GSA, 2009 WL 2914203, at *6 (E.D. Cal. Sept. 9, 2009).  Accordingly, the Court finds that the third Brillhart factor weighs in favor of abstention.

### E.   Other Factors

The Court finds that the other factors outlined by the Ninth Circuit in Dizol also weigh in favor of staying the instant federal action.  See Dizol, 133 F.3d at 1225 n.5.  To begin with, the federal action would not settle all aspects of the controversy.  Even if this Court were to resolve Burlington's claims, a number of related issues would remain in the underlying state actions.  While this action would clarify the legal relations between Burlington and myriad other parties to the underlying action, the Court is mindful of "the price of that clarification, which is calculated in terms of 'judicial administration, comity, and fairness to the litigants.'"

Bituminous Cas. Corp. v. Kerr Contractors, Inc., CV 10-78-MO,
2010 WL 2572772, at *6 (D. Or. June 22, 2010) (quoting
Chamberlain, 931 F.2d at 1367).

   For the reasons discussed above, the Court believes
that allowing the instant action to proceed at this time would
entail too great a cost.  There is evidence that Burlington
pursued the instant action in reaction to, or in anticipation of,
PSC's state court declaratory judgment claims, thus seeking "to
obtain a 'res judicata' advantage." Dizol, 133 F.3d at 1225 n.5.
Moreover, resolution of the instant action would result in undue
"entanglement between the federal and state court systems." Id.
Several of the issues here are related or identical to issues
that will be faced in the state court actions. See Stewart, 2010
WL 1904981 at *7; cf. Allstate Ins. Co. v. Gillette, C 05-02385
WHA, 2006 WL 997236, at *4 (N.D. Cal. Apr. 17, 2006) (finding
that parallel proceedings did not invite undue entanglement
because "[t]he issues [were] sufficiently distinct in the two
actions so that the courts [would] not be stepping on each
other's toes").  Finally, if the instant action were now to
proceed, Rehmer, PSC, Norva, Kahooleke, Panacorp, and Panajon
would all be inconvenienced by having to litigate in both state
and federal court.  By contrast, Burlington would not be greatly
inconvenienced by a stay because the pending state actions would
thereafter clarify Burlington's obligations.

### F.   Conclusion Regarding Declaratory Judgment Act Analysis

In summary, the Court concludes that the Brillhart factors and Dizol factors all weigh in favor of abstention. Moreover, "in the sound exercise of its discretion," the Court finds it appropriate to stay, rather than to dismiss, the instant federal action. Wilton, 515 U.S. at 288. First, this is consistent with the Court's finding that a stay is required under Younger. See supra Section I.E. Staying instead of dismissing this case "preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction." Gilbertson, 381 F.3d at 984. Second, "the use of stays instead of dismissal has been approved by courts in this circuit upon finding the Dizol factors warrant declining jurisdiction." Phoenix Assurance, 125 F. Supp. 2d at 1223 (citing John Deere Ins. Co. v. Smith Lighterage Co., 948 F. Supp. 947, 949 (W.D. Wash. 1996)). And third, staying this case "assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton, 515 U.S. at 288 n.2.[32]

---

[32] Although the Court stays the instant federal action, it is illogical, in the Court's view, for the parties to return to this Court in order to resolve Burlington's claim for reimbursement once the state courts have resolved the coverage dispute (assuming the state courts find there is no coverage).

(continued...)

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Rehmer's Stay Motion, (2) GRANTS PSC's Stay Motion, and (3) DENIES Norva's Motion to Dismiss.  The parties shall file, six months from this date and every six months thereafter, a joint status report advising this Court of the status of the proceedings in the state court.  Any party that believes it is appropriate to lift the stay based upon changed circumstances may file an appropriate motion with the Court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 23, 2010.



_____
Alan C. Kay
Sr. United States District Judge

---

[32]/(...continued)
In the event the state courts were to rule there is coverage under the Policy, then Burlington would have no right to reimbursement.  On the other hand, if the state courts were to decide in Burlington's favor that there is no coverage, then it would appear in all parties' best interests for the state courts to determine the amount of reasonable attorneys fees to which Burlington is entitled as reimbursement.  After all, the state courts would have presided over the trials and would be most knowledgeable regarding the attorneys fees.  Accordingly, the Court encourages the parties to litigate both the coverage and reimbursement issues in state court, and would welcome a joint stipulation dismissing the instant action.

<u>Burlington v. Panacorp, Inc., et al.</u>, Civ Nos. 09-00587 ACK-BMK & 10-00382 ACK-BMK, Order (1) Granting Defendant Rehmer's Stay Motion (2) Granting Defendant PSC's Stay Motion, and (3) Denying Defendant Norva's Motion to Dismiss.